# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JODI A. SCHWENDIMANN, f/k/a JODI A. DALVEY, an Individual and NUCOAT, Inc., a Minnesota corporation,<br><br>Plaintiffs<br>v.<br><br>NEENAH, INC., a Delaware corporation, and AVERY PRODUCTS CORPORATION, a Delaware corporation,<br><br>Defendants. | Civil Action No. _____-UNA<br><br>**COMPLAINT**<br>**(PATENT INFRINGEMENT)**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Jodi A. Schwendimann, f/k/a Jodi A. Dalvey ("Schwendimann") and NuCoat, Inc. ("NuCoat," collectively with Schwendimann, "Plaintiffs"), by and through undersigned counsel Berger Harris LLP, bring this action for patent infringement against Defendant Neenah, Inc. and Defendant Avery Products Corporation, and in support thereof allege as follows:

## SUMMARY OF THE ACTION

1. Defendant Neenah, Inc. ("Neenah") has engaged in the business of producing, selling and/or distributing image transfer papers or sheets in and outside the United States, including the allegedly infringing products accused in this lawsuit, under its own brands and under private-label brands of Avery Products Corporation ("Avery," collectively with Neenah, "Defendants") and other companies. Avery has engaged in the business of producing, selling and/or distributing image transfer papers or sheets in and outside the United States, including the allegedly infringing products accused in this lawsuit. As a result of Defendants' patent infringement, Defendants have caused Plaintiffs monetary damages in excess of $75,000.00.

## THE PARTIES

2. Plaintiff Jodi A. Schwendimann is an individual and a resident of Hennepin County, Minnesota.

3. Plaintiff NuCoat is a Minnesota corporation with its principal place of business at 13055 15th Ave. N., Plymouth, Minnesota, 55441. NuCoat is in the business of manufacturing and selling specialty paper products, including products that enable its customers to transfer images to T-shirts, sweatshirts, and other garments.

4. Neenah is a corporation organized under the laws of the State of Delaware with headquarters located at Preston Ridge III, 3460 Preston Ridge Road, Suite 600, Alpharetta, Georgia 30005. Neenah may be served with process via its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

5. Avery is a corporation organized under the laws of the State of Delaware with headquarters located at 50 Pointe Drive, in Brea, California 92821. Avery may be served with process via its registered agent: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

6. Joinder of these Defendants is proper pursuant to 35 U.S.C. § 299(a) because Plaintiffs' claims of patent infringement arise in part out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and selling of the same accused products, and questions of fact common to both Defendants will arise in this action.

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising under the Patent Act of the United States, 35 U.S.C. § 1 *et seq.*

8. This Court has original and exclusive jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a). This Court also has original jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and this action is between citizens of different states.

9. This Court may exercise personal jurisdiction over Defendants for at least the following reasons: (1) Defendants are incorporated and organized under the laws of the State of Delaware; (2) Defendants have manufactured, offered for sale, and/or sold products within the State of Delaware that infringe patents owned by Schwendimann; and (3) Defendants have purposefully established systematic and continuous contacts with this District and should reasonably expect to be brought into court here. Defendants are therefore subject to the jurisdiction of this Court.

10. Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c), at least because a substantial part of the events giving rise to the claim occurred in this district and under 28 U.S.C. § 1400(b) because Defendants "reside" in Delaware. Venue is also proper because Defendants are incorporated and organized under the laws of the State of Delaware and are subject to personal jurisdiction in this district.

### FACTUAL ALLEGATIONS

**I. THE FABRIC TRANSFER INDUSTRY.**

11. Printed T-shirts, sweatshirts, hats, and other garments are an important part of everyday life. Printed clothing fills modern closets, and printed clothing likewise fills the shelves at national retailers. Consumers buy printed T-shirts and sweatshirts to show support for their hometown football and baseball teams, their high schools and colleges, and their hobbies and interests.

12. There is a large retail market for selling transfer products to "do it yourself" ("DIY") hobbyists that print images using inkjet or laser printers and transfer the images using household irons. Because the transfers allow for customization, crafters use iron-on transfers in a variety of ways. For example, crafters may transfer a family name onto a pillow, transfer a school logo onto a baseball cap, or transfer artwork onto a tote bag.

13. The same chemistry is used when a retailer like Target orders thousands of shirts with the logo of the local NFL, MLB, or NBA team. The *transfer paper*, which has the special chemicals that bond the image to the fabric, simply comes on larger rolls, instead of being sold in single sheets. Household printers are replaced by commercial wide-format printers.

14. Prior to the embodiments of the inventions described and claimed in Plaintiff Schwendimann's patents, when transfer sheets traveled through laser printers or copiers, the high temperature in the printers and the copiers partially melted some polymer materials, such as wax, present in the transfer material. As a result, the laser printer or copier needed to be cleaned frequently.

15. The image transfer sheet inventions described and claimed in Plaintiff Schwendimann's above patents solved the problem of polymer materials melting in laser printers and copiers.

16. The embodiments of the inventions described and claimed in Plaintiff Schwendimann's above patents are not limited to use in laser printers and copiers. The embodiments of the inventions described and claimed in Plaintiff Schwendimann's above patents provide, in one embodiment of the invention, the capability of transferring images directly to a receiver element using a material capable of holding and transferring an image. A unique advantage of the above described embodiment is to enable all consumers to wear and display

apparel carrying designs that were formed on the substrate of the present invention by, for example, a photocopier or a computer printer in a timely and cost efficient means.

17. One of the uses of the image transfer sheets is to allow customers to print an image from a consumer or commercial printer, place the paper on a "base" (such as a T-shirt) and then, using heat, transfer the printed image to the base. This process is a modern "iron-on," allowing users to, among other things, print an image from their home printer, and transfer it to a T-shirt by ironing over the transfer paper.

18. Plaintiff Schwendimann's patented image transfer sheets and process have many other uses in the consumer, commercial, and industry markets.

## II. PLAINTIFF'S PATENTS

19. Plaintiff Schwendimann owns U.S. Patent No. 6,410,200 titled "Polymeric Composition and Printer/Copier Transfer Sheet Containing the Composition" (the "'200 Patent"), which issued on or about June 25, 2002. A copy of the '200 Patent is attached hereto as Exhibit A.

20. Plaintiff Schwendimann owns U.S. Patent No. 6,723,773 titled "Polymeric Composition and Printer/Copier Transfer Sheet Containing the Composition" (the "773 Patent"), which issued on April 20, 2004. A copy of the '773 Patent is attached hereto as Exhibit B.

21. The '200 Patent and '773 Patent will be referred collectively throughout as the "Patents-in-Suit."

## III. PLAINTIFFS' SALES OF COVERED PRODUCT.

22. The Inventors of each of the Patents-in-Suit are Scott Williams, Heather Penk, and Heather Reid. These Inventors originally assigned their rights to Foto-Wear, Inc. In 2011, the rights were assigned to MJ Solutions GmbH ("MJS"). In 2018, MJS assigned the rights to

Plaintiff Schwendimann. Schwendimann is the current assignee and holder of each of the Patents-in-Suit.

23. On August 1, 2011, Cooler Concepts, Inc. ("CCI") and MJS (the then-holder of each of the Patents-in-Suit) entered into a license agreement that granted to CCI a non-exclusive, royalty bearing license to make use, and to offer for sale or transfer products covered by one or more claims of – among other patents – the Patents-in-Suit.

24. From August 1, 2011, through December 31, 2012, CCI practiced the inventions described and claimed in the Patents-in-Suit by manufacturing and selling these innovative image transfer sheets.

25. On December 31, 2012, CCI became a qualified subchapter S subsidiary of NuCoat.

26. From December 31, 2012, through the present, NuCoat – as the assignee of the MJS-CCI license agreement – has practiced the inventions described and claimed in the Patents-in-Suit by manufacturing and selling these innovative image transfer sheets.

27. Since MJS assigned the rights to Plaintiff Schwendimann, NuCoat has – pursuant to a royalty-free license from Schwendimann – practiced the inventions described and claimed in the Patents-in-Suit by manufacturing and selling these innovative image transfer sheets.

28. NuCoat's customers have included a number of significant players in the industry. Other potential customers have turned to competitors like Neenah and Avery that are selling infringing products.

**IV. NEENAH'S INFRINGING ACTIVITIES**

1. Neenah has competed, and continues to compete, directly with NuCoat in the sales of fabric transfer products.

2. Upon information and belief, Defendant Neenah has made, used, sold, and/or offered for sale image transfer sheets, and potentially other products, which infringed at least Claims 1 of the '200 Patent and Claim 1 of the '773 Patent, including, but not limited to Neenah's JetProSS heat transfer paper and Photo Trans SC heat transfer paper. A copy of product information on Neenah's JetProSS product is attached hereto as Exhibit C. A copy of product information on Neenah's Photo Trans SC product is attached hereto as Exhibit D.

3. Upon information and belief, Neenah has performed these infringing activities – at least in part – under private label brands, including Avery.

4. Neenah's JetProSS product is a heat transfer paper. https://www.neenahperformance.com/~/media/Performance/Products/Heat%20Transfer%20Paper/Sell%20Sheets/Neenah_Inkjet_Heat_Transfer.ashx.

5. Neenah's JetProSS product is a coated transfer sheet.

6. Neenah's JetProSS product is a polymeric composition.

7. Neenah's JetProSS product has a substrate with a first surface.

8. Neenah's JetProSS product has a substrate with a second surface.

9. Neenah's JetProSS product has at least one release layer overlaying the first surface.

10. The release layer of Neenah's JetProSS product has a film-forming binder.

11. The release layer of Neenah's JetProSS product has an acrylic dispersion.

12. The release layer of Neenah's JetProSS product has an elastomeric emulsion.

13. The release layer of Neenah's JetProSS product has a water repellant.

14. The release layer of Neenah's JetProSS product has a plasticizer.

15. The "SS" in Neenah's JetProSS product stands for "Soft Stretch."

http://www.neenahperformance.com/~/media/Performance/Products/Heat%20Transfer%20Paper/Sell%20Sheets/NC%20HT%20Combined_Letter.ashx

16. Application of Neenah's JetProSS product results in a soft image. https://www.neenahperformance.com/~/media/Performance/Products/Heat%20Transfer%20Paper/Sell%20Sheets/Neenah_Inkjet_Heat_Transfer.ashx.

17. Application of Neenah's JetProSS product results in an image that can stretch without cracking.

18. Application of Neenah's JetProSS product results in an image that will withstand many laundry cycles.

19. Neenah's instructs users of its JetProSS heat transfer paper to place the transfer on top of the garment with the image side touching the substrate.

20. Neenah's instructs users of its JetProSS heat transfer paper that, when using a commercial press, to Press 30 seconds @375ºF using heavy pressure.

21. Neenah's instructs users of its JetProSS heat transfer paper that, when using a hand iron, to use 2 hands, use heavy pressure, and slide the iron up and down (vertically) over the entire image for 90 seconds, then repeat going from left to right (horizontally) for 90 seconds.

22. Neenah's instructs users of its JetProSS heat transfer paper to peel the backing paper from the image on the garment.

23. Neenah's instructs users of its JetProSS heat transfer paper that, when using a commercial press, paper may be peeled at any temperature.

24. Neenah's Photo Trans SC product is a heat transfer paper.

25. Neenah's Photo Trans SC product is a coated transfer sheet.

26. Neenah's Photo Trans SC product is a polymeric composition.

27. Neenah's Photo Trans SC product has a substrate with a first surface.

28. Neenah's Photo Trans SC product has a substrate with a second surface.

29. Neenah's Photo Trans SC product has at least one release layer overlaying the first surface.

30. The release layer of Neenah's Photo Trans SC product has a film-forming binder.

31. The release layer of Neenah's Photo Trans SC product has an acrylic dispersion.

32. The release layer of Neenah's Photo Trans SC product has an elastomeric emulsion.

33. The release layer of Neenah's Photo Trans SC product has a water repellant.

34. The release layer of Neenah's Photo Trans SC product has a plasticizer.

35. Application of Neenah's Photo Trans SC product results in an image that can stretch without cracking.

36. Application of Neenah's Photo Trans SC product results in an image that will withstand many laundry cycles.

37. Application of Neenah's Photo Trans SC product results in a soft image.

38. Neenah's instructs users of its Photo Trans SC product to place the transfer on top of the garment with the image side down.

39. Neenah's instructs users of its Photo Trans SC product that, when using a commercial press, to Press 30 seconds at 375ºF using medium pressure.

40. Neenah's instructs users of its Photo Trans SC product that, when using a hand iron, to use 2 hands, firmly slide the iron up and down (vertically) for 90 seconds, then repeat going from side to side (horizontally) for 90 seconds.

41. Neenah's instructs users of its Photo Trans SC product to remove the paper from

the garment.

42. Upon information and belief, Neenah had actual knowledge of the Patents-in-Suit, but nonetheless made and continued to make, use, sell, and/or offer to sell their infringing products.

43. For example, Schwendimann told Bob Conforti about her fabric transfer patents when Conforti worked for Arkwright. Conforti now serves as Neenah's Vice President for New Business & Technology Development.

44. Despite Neenah's longstanding knowledge of Schwendimann's patents and products, Neenah has never entered into a license agreement with Schwendimann relating to her fabric transfer patents or ceased sales of fabric transfer products. Instead, Neenah continued selling infringing product.

## V. AVERY'S INFRINGING ACTIVITIES

45. Upon information and belief, Defendant Avery has made, used, sold, and/or offered for sale image transfer sheets, and potentially other products, which infringed at least Claim 1 of the '200 Patent and Claim 1 of the '773 Patent, including, but not limited to Avery's T-Shirt Transfers for Light Fabric (8938) (the "8938 Product"). A copy of product information on Avery's 8938 Product is attached hereto as <u>Exhibit E</u>.

46. Avery's 8938 Products are iron-on transfer sheets.

47. Avery's 8938 Product is a coated transfer sheet.

48. Avery's 8938 Product is a polymeric composition.

49. Avery's 8938 Product has a substrate with a first surface.

50. Avery's 8938 Product has a substrate with a second surface.

51. Avery's 8938 Product has at least one release layer overlaying the first surface.

52. The release layer of Avery's 8938 Product has a film-forming binder.

53. The release layer of Avery's 8938 Product has an acrylic dispersion.

54. The release layer of Avery's 8938 Product has an elastomeric emulsion.

55. The release layer of Avery's 8938 Product has a water repellant.

56. The release layer of Avery's 8938 Product has a plasticizer.

57. Application of Avery's 8938 Product results in a soft image.

58. Application of Avery's 8938 Product results in an image in which colors stay bright, even after being washed.

59. Application of Avery's 8938 Product results in an image that will withstand many laundry cycles.

60. Avery instructs users of its 8938 Product to place the transfer design down on the garment.

61. Avery instructs users of its 8938 Product to iron the transfer, applying firm pressure slowly from left to right and then from top to bottom.

62. Avery instructs users of its 8938 Product to smoothly and slowly peel backing paper away from the garment.

63. Avery instructs users of its 8938 Product that, after ironing, remove the garment from the heating area and allow to cool for 2 minutes.

64. Upon information and belief, Avery had actual knowledge of the Patents-in-Suit, but nonetheless made and continued to make, use, sell, and/or offer to sell their infringing products.

65. Schwendimann had a relationship with Avery as early as the late 1990s when she launched light fabric transfer products with Avery when she was working for American Coating.

Avery's first light transfer product was American Coating's product.

66. In early 2017, Avery and Schwendimann had a meeting to review NuCoat's T-Shirt Transfers. In connection with those discussions, Schwendimann provided a list of her patents in transfer papers.

67. Despite Avery's longstanding knowledge of Schwendimann's patents and products, Avery has never entered into a license agreement with Schwendimann relating to her fabric transfer patents or ceased sales of fabric transfer products. Instead, Avery continued selling infringing product.

## VI. PLAINTIFFS' DAMAGES

68. As to Defendants, Plaintiffs seek monetary damages and injunctive relief arising from Defendants' infringement.

69. More specifically, from the period of approximately July 2013, through the present, Plaintiffs are entitled to recover damages from Defendants for infringement of Claim 1 of the '200 Patent and Claim 1 of the '773 Patent.

70. In addition, Defendants induced and/or contributed to, and are inducing and/or contributing to, the infringement of one or more other claims in the Patents-in-Suit, including but not limited to Claim 29 of the '200 Patent.

### COUNT I (AGAINST ALL DEFENDANTS)
### Infringement of U.S. Patent Nos. 6,410,200 and 6,723,773

71. Plaintiffs incorporate by reference the above paragraphs as if stated herein.

72. The Patents-in-Suit are valid and enforceable.

73. Defendants have infringed, and are directly, knowingly and actively infringing at least one claim of the '200 Patent, including, without limitation, Claim 1.

74. Defendants have infringed, and are directly, knowingly and actively infringing at least one claim of the '773 Patent, including, without limitation, Claim 1.

75. In addition, Defendants induced and/or contributed to, and are inducing and/or contributing to, the infringement of one or more other claims in the Patents-in-Suit, including but not limited to Claim 29 of the '200 Patent.

76. Defendants' acts of direct infringement include, but are not limited to, making, using, selling, and/or offering for sale within this District and elsewhere image transfer sheets, and/or other products or methods incorporating Plaintiff Schwendimann's patented transfer sheets or methods for transferring an image as claimed in the above patents.

77. Defendants' acts of inducing and contributory infringement include, but are not limited to, causing end consumers to directly infringe Plaintiff Schwendimann's patents by selling and/or offering for sale image transfer sheets to end consumers with explicit instructions to use the image transfer sheets in a manner that Defendants know to be infringing.

78. Such illegal patent infringement activities have caused and will continue to cause loss and injury to Plaintiffs, for which Plaintiffs are entitled to monetary damages and injunctive relief.

79. Upon information and belief, Defendants' infringement was and continues to be intentional, knowing, willful, deliberate, without license or justification, and with full knowledge of Plaintiff's patent rights.

80. Because of Defendants' willful conduct, Plaintiffs are entitled to recover three times its damages, as well as lost profits, costs, attorneys' fees, and investigative fees.

81. By infringing Plaintiff's patents, Defendants have caused, and will continued to cause, Plaintiffs irreparable injury and damage for which Plaintiffs have no adequate remedy at

law, unless and until this Court enjoins Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. A judgment that Defendants have infringed, induced infringement, and contributorily infringed Plaintiff's rights under the '200 and '773 Patents;

2. A permanent injunction enjoining Defendants from infringing, inducing infringement, and from contributing to the infringement of the '200 and '773 Patents;

3. A judgment that at least some of Defendants' various acts of infringement have been in willful and in deliberate disregard of Plaintiff's patent rights;

4. A judgment awarding Plaintiffs compensatory and exemplary damages, but not less than a reasonable royalty, including allowance of multiplied damages based on Defendants' willful and deliberate infringement;

5. A judgment awarding Plaintiffs their costs incurred herein, including attorneys' fees for an exceptional case pursuant to 35 U.S.C. § 285; and

6. A judgment awarding Plaintiffs such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial as to all issues so triable.

[Signature on next page.]

Dated: July 22, 2019
Wilmington, Delaware

**BERGER HARRIS LLP**

*/s/ Peter C. McGivney*
Peter C. McGivney (DE Bar Id.: 5779)
1105 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-1140
Fax: (302) 655-1131
pmcgivney@bergerharris.com

*Attorneys for Plaintiffs*